Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
District of _Columbia_

_____ Division

LAS Vegas Public Radio INc.

_Plaintiff(s)_
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

Corporation for Public Broadcasting
FCC Communications Commission

_Defendant(s)_
(Write the full name of each defendant who is being sued.  If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:17-cv-02113          (F-Deck)
Assigned To : Mehta, Amit P.
Assign. Date : 10/10/2017
Description: Pro Se Gen. Civil

Jury Trial:  (check one)    ☐ Yes   ☒ No

## COMPLAINT FOR A CIVIL CASE

**OCT 1 0 2017**

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
needed.

| | |
|---|---|
| Name | Las Vegas Public Radio INc. |
| Street Address | 400 South Fourth Street Suite 500 |
| City and County | Las Vegas, Clark |
| State and Zip Code | Nevada. 89101 |
| Telephone Number | (702)-425-4088 |
| E-mail Address | info @ lvpr. org |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation.  For an individual defendant,
include the person's job or title (if known).  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name    Corporation for Public Broadcasting

Job or Title *(if known)*

Street Address    401 9th Street, N.W

City and County    Washington, D.C.

State and Zip Code    District of Columbia 20004-2129

Telephone Number    202-879-9600

E-mail Address *(if known)*    www.cpb.org

Defendant No. 2

Name    FCC Communications Commission

Job or Title *(if known)*

Street Address    445 12th Street, SW

City and County    WAshington, D'C

State and Zip Code    District of Columbia 20554

Telephone Number    1-888-225-5322

E-mail Address *(if known)*    www.fcc.gov

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☒ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*FIRST Amendment          18 USC Section 241*
*FIFTH Amendment          42 USC 1983*
*Fourteenth Amendment*

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)* _____ , is a citizen of the State of *(name)* _____

b.    If the plaintiff is a corporation

The plaintiff,  *(name)* _____ , is incorporated under the laws of the State of *(name)* _____

and has its principal place of business in the State of *(name)* _____

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

     b.     If the defendant is a corporation

          The defendant,  *(name)* _____ , is incorporated under

          the laws of the State of *(name)* _____ , and has its

          principal place of business in the State of *(name)* _____ .

          Or is incorporated under the laws of *(foreign nation)* _____ ,

          and has its principal place of business in *(name)* _____ .

     *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

     The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See attached Statement of Claims*

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*See attached Relief damages and other relief*

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   OctoBer 2, 2017

Signature of Plaintiff

Printed Name of Plaintiff   Gregory P. LaPorta

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

1 | LAS VEGAS PUBLIC RADIO INC.                    Page 1 of 22

2 | KIOF-LP 97.9 FM

3 | 400 S.FOURTH ST. SUITE 500

4 | LAS VEGAS, NEVADA 89101

5 | (702) 425-4088

6 | www.lvpr.org

7 | **UNITED STATES DISTRIC COURT**

8 | **for the**

9 | **DISTRICT OF COLUMBIA**

10 |

Case: 1:17-cv-02113          (F-Deck)
Assigned To : Mehta, Amit P.
Assign. Date : 10/10/2017
Description: Pro Se Gen. Civil

11 | LAS VEGAS PUBLIC RADIO INC.

12 |  Plaintiff,

13 | vs.                                 **COMPLAINT FOR A CIVIL CASE**

14 | CORPORATION FOR PUBLIC BROADCASTING

15 | FCC COMMUNICATIONS COMMISSION

16 | _____ Defendants. _____

17 |

18 |     COMES NOW, Plaintiff LAS VEGAS PUBLIC RADIO INC. BY PRO SE,and hereby

19 | Complains, alleges and avers against the named Defendants,CORPORATION FOR

20 | PUBLIC BROADCASTING,and FCC COMMUNICATIONS COMMISSION as follows:

21 |

22 |                 **I.   PARTIES AND JURISDICTION**

23 | 1.   Plaintiff, LAS VEGAS PUBLIC RADIO INC.,(hereinafter "LVPR"),is a

24 | corporation in Clark County, Nevada.

25 | 2.   At all times relevant herein, Defendant CORPORATION FOR PUBLIC

26 | BROADCASTING,(hereinafter "CPB"), is a Distric of Columbia Corporation doing

27 | business in the state of Nevada when the events herein occurred.

28 | 3.   At all times relevant herein, Defendant FCC COMMUNICATIONS COMMISSION,

(hereinafter "FCC"),is a District of Columbia Corporation doing business

the state of Nevada when the events herein occurred.

4.   The true names of the capacities, whether individual, agency, corporate,

associate or otherwise, of Defendants, DOES 1 through 7 , inclusive, are

unknown to Plaintiff. Plaintiff willl ask leave of the Court to amend this

Complaint to show the true names and capacities of these Defendants, as they

become known to Plaintiff. Plaintiff believes each Defendant named as DOE was

responsible for contributing to Plaintiffs damages,set forth herein.

5.   Jurisdiction and Venue is proper in this court: FEDERAL QUESTION

### FACTS COMMON TO ALL ALLEGATIONS

On 5/08/2017 LVPR applied for a Community Service Grant (henceforth

referred to as "CSG") from the CPB.

As part of the application for a CSG, LVPR made a simultaneous request

for a financial hardship waiver of the Non Federal Financial Support

(henceforth referred to as "NFFS") requirement. The CPB does not count In

Kind Contributions when determining NFFS which is exclusionary.

The Financial hardship waiver was due to LVPR's station project into

North Las Vegas, which comprises two thirds of its minority listener audienc

and is within LVPR'S FCC approved contour map which comprises minority

populations still struggling to recover from the catastrophic recession of

2008.

Also,  on 5/08/2017 LVPR requested CPB to waive a non statutory eligibility

criteria regarding Audience Service Criteria (henceforth referred to as

"ASC"), since there was no response/communication from Nielsen Audio.

On 5/08/2017 LVPR applied as a Minority Audience Service Station (henceforth

referred to as "MASS"). A MASS is a radio station that provides significant

service to a minority group or groups through diverse programming that serves the needs and interests of minorities.

 Stations are deemed MASS if they meet at least one of three criteria. LVPR chose (#1) which states, "A measured minority audience composition (cume) greater than 45 per cent averaged over the previous 3 consecutive measured quarters. LVPR asked the CPB to wave the ASC,  because it is discriminatory, exclusionary and confiscatory.

On 8/22/2017 CPB willfully and intentionally denied LVPR's application for CSG.The denial stated, "KIOF-LP does not meet the criteria to qualify as a Level B station for the CPB CSG program at this time. Specifically, KIOF-LP is not eligible for a CSG because it does not meet the required Non Federal Financial Support (NFFS) minimum of $300,000, the two Full-Time Employee staffing requirement, nor the Audience Service Criteria".

### III.   STATEMENT OF FIRST CLAIM

1.CPB has impermissibly erected a barrier to its CSG program which is funded by U.S. Taxpayers to sustain public non commercial radio stations, including Limited Power FM MASS stations. CPB is extremely bias towards LVPR because LVPR challenged CPB's policies of discriminatory, exclusionary and confiscatory behavior. The 2010 U.S. Supreme Court's Citizen United decision has interpreted, that corporations are also, "people". LVPR in 2017 has been deprived of its statutory and constitutional rights, to access public grant funding by CPB, a private corporation funded by the American people. The denial of CSG and loss of benefits curtail LVPR's ability to exercise Freedom of Speech to report and disseminate truthful facts regarding local, state and federal corruption within our government. CPB has established a

pattern of deceit and institutional bias, since silence is their modus operande. With no answers forthcoming, "indecision is a decision".

CPB denial does not reflect what CPB requirements state. "Accordingly, there are four CSG levels: A,B.C, and D. as stated in 2016 Radio CSG "General Provisions and Eligibility Criteria", which was used to determine LVPR application. The requirements state that, "Stations that must have a minimum NFFS of $100,000 for a MASS station  and include MASS with a minority cume composition of at least 75%". LVPR would meet the $100,000 requirment if CPB would have included In Kind Contributions for services rendered, which are factual on a corporations profit and loss.

 CPB "Full-Time Employee staffing requirement for MASS is one FULL TIME (FT) or MASS grantees may meet the Staffing Requirement with FTEs. (Full Time Equivalents)". LVPR listed 2 FT Employees who meet all Internal Revenue Service (IRS) standards. LVPR FT employees elected by persoal choice,"EXEMPT" No salary recognized by owner. According to IRS Department of the Treasury, Jeffrey I. Cooper, Director, Exempt Organizations Rulings and Agreements, if an owner elects by choice to not take a salary or is W4 EXEMPT, this does not mean, the owner is not an employee. CPB unilaterally over rules the IRS and even tries to supercede IRS mandates.

The ASC is only a guesstimate by Nielsen (Arbitron) Ratings. Therefore, LVPR applied for a waiver. But, CPB in its sole discretion and in exceptional circumatances could have waived this contested policy, because LVPR's public services are primarily for underserved or unserved audiences which fits the description for eligibility. CPB requires a look back period of 2 to 3 years for ratings purposes, which does not exist for new applicants like LVPR.

### FIRST CAUSE OF ACTION

(violations of of FIRST AMENDMENT U.S. Constitution –

Direct Institution Discrimination

Plaintiff repeats and re-alleges each and every allegatgion in this Complaint,

and further alleges, as follows:

Pursuant to The First Amendment CPB had a duty to make appropriate correction

in LVPR's application for CSG benefits.

CPB uses arbitrary language based on individual discretion, not supported by

fair or substantial reason and uses indirect, cultural discrimination and

different treatment for similarly situated parties, when no legitimate reason

appears to exist. The more repugnant the discrimination, the more likely it

is to be found unlawful under the U.S. Constitution.

The Radio Research Consortium (RRC) Nielsen Ratings are all theoretical, and

do not answer the who, what, when, where or how and never the why in their

Time Spent Listening (TSL) and suggest TSL is only an estimate of the number

of quarter-hours the average person spends listening during a specified time

period.

There is no creditable proven scientific evidence or data to support Nielsen

claims, which invalidates CPB requirements know as ASC. Nielsen's survey data

and like all surveys, the listening figures are subject to sampling error.

U.S. Census minority numbers differ from per capita minority figures and per

capita income figures published by other federal agencies, such as the Bureau

of Economic Analysis. Each data set has its own strengths and weaknesses and

plus or minus 3% margin of error. Also, Nielsen excludes passengers in

vehicles with high definition radio and people who enjoy listening on their

headsets in Las Vegas's beautiful parks while exercising. There are over

325,000 passenger cars using the Interstate (I-15) daily on repeat trips from the Creech and Nellis AirForce base areas, that go right past LVPR's 100 ft. antenna, located at the I-15 and Cheyenne off ramp.

Policy makers at CPB have not done their part to welcome and encourage economic ingenuity. They would rather stifle creative enterprises under a blizzard of protective edicts designed primarily to shield extablished interests from competition.

In the CPB CSG system there are 408 grantees, representing 1,136 multiple radio statios, none of which are Limited Power (LP) stations like LVPR. LVPR is 90% staffed with minority military veteran volunteers from the Creech and Nellis Air Force base areas in Las Vegas, which meets CPB's DIVERSITY requirements. LVPR has 25% Hispanic, 25% African American, 25% Chinese and 25% Women minority population within its mandated contour map area and has the same proportioned on its staff.

CPB executives are selective and will only let existing repeat grantees educate themselves and prohibits new applicants from participating in CPB in house computer system "without CPB executive permission". The structural discrimination arises from the institutional policies, that directly favor only grantees within CPB. CPB tends to change its rules in the middle of the ball game and has raised the bar to offset any challenges to its policies. CPB allows existing grantees, waivers and "other projects" to meet failing requirements, but excludes waivers or side projects by new Limited Power (LP) applicants, including LVPR. Some existing grantees who have sustainable cash assets, have been in CPB's system since their inception for over 25  years and are annually awarded "rubber stamped" CSG's.

That as a result of CPB's violations under the statute LVPR has suffered severe financial loss and emotion damages. The continuing corporate compression, mental and financial stress caused by CPB's consecutive denials to LVPR on 8/17/2016 AND 8/22/2017 squeezes out "Limited Power" competition for funding, allows for no elasticity and upward mobility to expand LVPR's newsroom, which offers a Department of Justice (DOJ) approved method and "difference of opinion" to enforce freedom of speech, a right guaranteed under the First Amendment of the U.S Constitution.

LVPR is asking the court to award the following Direct Damages Caused by CPB denial of CSG funding:

Based upon Section 11. CSG: Requirements A. Unrestricted CSG

1. Programming, Production and Services Lost Revenue

   a. Programming and Production – Direct         $15,063.00

   b. Educational Programs Lost Revenue         $10,800.00

c. Educational Outreach Activities Lost Revenue    $3,800.00

2. Broadcasting, Transmission, and Distribution    $15,538.00

5. Underwriting and Grant Solicitation        $4,199.75

6. Management and General Lost Revenue      <u>$4,924.00</u>

Sub Total of UR Damages on Projected CSG Pool Grant  <u>$54,234.75</u>

Based upon Section 11. CSG: Requirements B. Restricted CSG

2. Program and Content Acquisition Expenditures. The Direct Loss of revenue funds which LVPR could have realized in purchasing National Public Radio Educational Programming, (25% of $72,313 on projected CSG Pool Grant in 2017).

Total of Restricted damages on projected CSG

 Pool Grant                              <u>$18,078.25</u>

Total Damages Based on projected CSG Pool Grant 2017 <u>$72,313.00</u>

<u>MASS</u> applied to CSG Base Grant + NFFS

(additional 2017 lost revenue that would have been

realized from sharing

in larger pool) = 1.5% of $72,313.00                    $108,469.00

Total Requested Damages Based on projected

CSG Grant 2017                                          <u>$180,782.00</u>


### STATEMENT OF SECOND CLAIM

2. Since, time has been of essence, the CPB and its Office of Inspector
General (OIG) counsel,refused to communicate in 2016 and 2017 with LVPR when
challenged on CPB's discriminatory, exclusionary and confiscatory policies,
following a complaint filing with the Chairman of the FCC and the Inspector
General for CPB for decisions in a timely manner, regarding requirements and
increased power requests for Low Power (LP) rule making matters pending befor
the FCC, an impartial and quasi-judicial body, which would have allowed
credence to LVPR application for CSG "waivers", in the area of ASC
requirements (listeners having difficulty due to interference and Limited
Power). LVPR alleges, CPB's obvious bias among CPB administrators and its
radio division regulators when it comes to Limited Power applicants violates
LVPR's right to due process under the "Equal Protection Clause"- the basis of
rejecting irrational or unnecessary discrimination against people belongingto
various groups. g. g. Limited Power or LPFM's. In 2016 and 2017 there were no
Limited Power FM stations currently in the CPB CSG system receiving CSG funds.
Programming, using the "25% Rule" can be used by existing applicants for
renumeration and is paid to National Public Radio (NPR) using CPB taxpayer

money. CPB grant funding pays the freight for existing stations' tower contracts, utility bills, engineering costs, information technology (IT) costs, studio rentals, insurance, etc. These exceptional grantees's operational costs with in CPB purview are absorbed by taxpayers. CPB excluded LVPR as a new applicant from the same.

CPB makes no allowances for an appeal of their application process, other than entering a U.S. Distric Court. CPB policies and requirements are discriminatory, exclusionary and confiscatory regarding NFFS, ASC and FT. CPB unilaterally exercises its discriminate powers, not withstanding IRS regulations. There is no allotment to "amend" an application when CPB unilaterally sets the Level for a station's funding. LVPR has no lateral ability to obtain an "equal" allotment in the current market.

### SECOND CAUSE OF ACTION

**(Violations of Fourteenth Amendment of U.S. Constitution - "Equal Protection Clause" - Also caused by Direct Institution Discrimination)**

Plaintiff repeats and re-alleges each and every allegation in this Complaint, and further alleges, as follows:

Pursuant to Fourteenth Amendment "Equal Protection Clause" CPB had a duty to make available an amendment process for new applicants like it does for existing grantees in its CSG program., e.g. "other projects to help meet failing requirements".

In contravention to the spirit of the statute CPB refused to fully process LVPR's written application and instead referred LVPR to the court system. LVPR has no funds to retain the services of an attorney to prosecute this action, and a reasonable sum should be allowed as and for attorney's fees and

costs incurred. LVPR requests the court to appoint an attorney from its Pro Bono Pool (The Civil Pro Bono Panel-Local Civil Rule 83.11 (b)(3). Status rules are partly about collusion, about attracting educated people to your circle, tightening the bonds between you and erecting shields against everybody else. CPB has created barriers towards Limited Power and LVPR's up ward mobility, that are more devastating for being invisible, e.g. Nielsen Arbitron ratings, which are only guesstimates. The rest of America can't name them, can't understand them. They just know they're there. The over burdensome regulations, direct and indirect discrimination is subtle and the well connected can limit competition by increasing the barriers to enter the public radio industry. A National Association Of Broadcator petition by their lobbyist law firm- Pillsbury Winthrop Shaw Pittman LLP dated Ausust 31, 2015 was sent to the FCC on Rule Making to zone out Limited Power FM stations. CPB and their Public affiliates condoned NBA's behavior and signed the petition, which was over ruled by the FCC.

LVPR meets all CPB and FCC operating requirements. LVPR has been licensed by the FCC to operate at 100 watts since January 2016. CPB requirements state, "Grantees must comply with the operational requirements. Operating Power: Grantees must operate a broadcast station that has an ERP of 100 watts or greater in the case of an FM station. CPB determines, in its "sole" discretion, that issuance of a CSG would further CPB's statutory goals of universal service and provide service to unserved or under served audiences". Although, CPB's Office of Inspector General (OIG) acts like a "shadow organization" and a 'criminal syndicate'. It's not about fixing LVPR's application. It's not about helping new members under the Local Community Radio Act of 2010. It's about maintaining power,and control over the money

which is being used to annually rubber stamp existing grantees in CPB's system, who already have the liquid cash assets to "sustain" themselves and shouldn't even be in the system. LVPR requests $100,000.00 for compensatory damages.

### STATEMENT OF THIRD CLAIM

3. CPB is required to be self-interested to guarantee annual rubber stamped funding from Congress. CPB in return, then annually "rubber stamps" existing applicants in their "good old boys network" protection system of alleged corruption. Thus, CPB is indirectly controlled by Congress, however remotely, it also can be considered a government entity. CPB allows existing grantees in their system, some who have been in their system for over 25 years waiver projects to help meet CPB's requirements, but CPB will not give one waiver or side project to LVPR. Since, The Local Community Radio Act of 2010 has been in place the NFFS threshold requirement has been set and reset several times, only to exclude LPFM's from entering the CSG benefit.

 CPB knows that there are approximately one thousand two hundred and fifty (1,250) 501 C3 Charitable Organizations including LVPR competing for funding. Fity percent raise less than one hundred thousand dollars annually. Small towns outside of Las Vegas and outside Nevada across the United States have the same problem. CPB has purposely set the bar too high.

Following a 1984 Supreme Court ruling -Chevron U.S.A. V Natural Resources Defense Council- that judges should give "deference" to executive agencies' interpretations unless their rules are clearly unreasonable. LVPR asks the court to not give "deference to CPB executive requirements, who's rules are clearly unreasonable and are discriminatory, exclusionary and confiscatory.

Passive courts, acccommodating the administrative state's activities, are
permissive about agencies' regulatory behavior that blurs the line between
legislation and regulation. LVPR's KIOF-LP 97.9 FM solicits the U.S. District
Court for answers to discriminatory, exclusionary and confiscatory policies
and unanswered questions by CPB, including this one implicating the Fifth
Amendment's due-process guarantee: May an economically self-interested entity
exercise regulatory authority over competitors? The economic crimes endured
by staff and U.S. military volunteers at LVPR due to epic failures of the
past 3 administrations ends with this filing.

### THIRD CAUSE OF ACTION

(Violations of Fifth Amendment U.S. Constitution "Due Process Clause")
Plaintiff repeats and re-alleges each and every allegation contained in the
preceding paragraphs as though set forth herein, and further alleges, as
follows.
Pursuant to Fifth Amendment rights under the "Due Process Clause", which is
implied equal protection requirement (Bolling v Sharpe), LVPR has been
deprived of life, liberty and financial property, without due process of law,
including procedural due process and substantive due process by CPB. CPB
failed to ensure LVPR fundamental fairness by not guaranteeing an appeal
process, knowing LVPR has a right to be heard by the court in an end process,
which is costly and deferred prosecution. CPB violated LVPR substantive
process, which is "implicit" in the concept of ordered liberty.
CPB's CSG zones out new applicants and sets the bar so high, which limits any
upward mobility for expansion and imposes criteria on the applications, that

go gar beyond what Congress has authorized. LVPR asks the court for CPB's

inexplicable behavior - damages of $100,000.00.

### STATEMENT OF FOURTH COMPLAINT

4.CPB since 2002 has used programs to blacklist thousands of applications for

benefits that would also sustain Limited Power FM (LPFM) stations as national

security concerns. Researching national security concerns, nothing could be

further from the truth. LVPR is registered with Homeland Seccurity and FCC's

EAS (Emergency Alert System) Test Reporting System (ETRS) and participates

in National EAS TESTS. LVPR's participation allows it to move from a

secondary to primary station status and helps warrant consideration when

applying for upgrades in power. But, CPB blocks any attempts at upward

mobility. e.g. CPB and its affilliates will not allow interference testing

knowing, that signals of mixed opportunity exist. Thus, CPB will not allow

requested waivers for recession hardest hit areas when computing ASC. Without

a good sound signal LVPR cannot sell underwriting contracts to enforce CPB's

ASC requirement.

### FOURTH CAUSE OF ACTION

(Violations of 18 U.S.C. Sec.241 -Conspiracy Against Rights)

Plantiff repeats and re-alleges each and every allegation contained in the

preceding paragraphs as though set forth herein, and further alleges, as

follows:

LVPR's complaint recognizes that one of two possibilities exists: The CPB and

FCC boards are full of weak-kneed yes-men who won't rock the taxpayer funded

gravy train that everyone on the inside benefits from. Or board members act

in concert, individualluy, privately and outside of LVPR's public application

process, both CPB and FCC discussed killing LVPR's applications before the carefully orchestrated show and denial of CSG benefits by CPB and power increases by FCC., because moving forward it will open doors for other LPFM applicants to enter the CSG program. Currently, there are zero LPFM stations being serviced by CPB and LVPR's offset opens the door for LPFM stations to enter the silent, "good old boys network" and "shave" cash off their awards. LVPR seeks damages from CPB of $100,000.00 in Conspiracy Against LVPR's Rights to life, liberty and the pursuit of happiness under the U.S. Constitution.

### STATEMENT OF FIFTH COMPLAINT

5.LVPR alleges that CPB's Office of Inspector General (OIG) silence in representing the CPB and FCC executives "agreed either explicitly or tacitly to act in concert to unlawfully influence LVPR's request for CSG benefits. This is an action for wanton, reckless and intentional actions and omissions giving rise to fraud and other unlawful and unconstitutional activities perpetrated by governmental agencies and employees trusted by the people of the U.S. of America. No appeal process within CPB is indicative that a declaratory decree was violated or declaratory relief was unavailable. For purpose of depriving LVPR's of its Rights, CPB violated a statute of the District of Columbia.

### FIFTH CAUSE OF ACTION

(Violations of 42 U.S.C. Sec. 1983 of Civil Action For Deprication of Rights) Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as though set forth herein, and further alleges, as follows:

Pursuant to 42 USC Section 1983 Civil Action For Deprication of Rights, CPB knowingly violated LVPR's rights by an act of commission giving rise to fraud.A declaratory decree was violated or declaratory relief was unavailable. For the purpose of this section, "any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia".

LVPR seeks damages of $100,000.00 from CPB for deprication of rights.

### STATEMENT OF SIXTH COMPLAINT

6. THE FCC mandate REGARDING "LP" LABELING FOR LVPR KIOF-LP 97.9 FM is discriminatory, exclusionary and confiscatory. The FCC "LP" mandate applies only to LPFM stations. The FCC mandates an "LP" label must be attached to LVPR call letters- KIOF-LP 97.9 FM. The oppressive required labeling has become a "turn off" to prospective underwriters, because the labeling  sends a signal to any buyer, that KIOF-LP is a limited power station and why should we underwrite a public radio station with limited power, whereas listening might be a problem. This makes it difficult if not impossible for KIOF-LP to raise funds from local businesses to help meet the NFFS requirement by CPB. Satellite radio becomes more attractive to a buyer. Therefore, CPB & FCC know this and that KIOF-LP will never be able to compete and meet CPB required Level B for MASS, because KIOF-LP is set apart from all other applicants and set up for failure. CPB and FCC have raised the bar to keep Local Community LPFM's from competing for funding and wants them off the market. Hundreds of LPFM's have recently returned their licenses back to the FCC.

### SIXTH CAUSE OF ACTION

(Violations of 18 U.S.C. Sec. 241-Conspiracy Against Rights (CR))

Plaintiff repeats and re-alleges each and every allegation in this Complaint, and further alleges, as follows:

Pursuant to 18 USC Sec. 241 FCC had a duty to LVPR under this statute to perform a reasonable investigation and make appropriate corrections to prevent continuing discrimination in the radio market place.

The U.S. Airforce Research Lab/RIEA in Washington D.C. in 2014 under the direction of Dr. Erik Blasch, Thao Nguyen (Air Force Research Lab/RYWN, and Chun Yang Sigtem Technology, Inc. in their study titled "Mobile Positioning via Fusion of Mixed Signals of Opportunity (SOOP) have proven that an intangible 100, 250, 500, or 1,000 watt radio signal asset is seamless and unnoticeable when in comparison with a 10,000 or even 100,000 watt signal or even with a cell signal. LVPR forwarded this information to FCC Chairman Ajit Pai for analysis. No reply was forthcoming.

Henceforth, there will never be an "equal playing field" for LPFM to competer for underwriting revenue when the FCC mandates an "LP" label must be attached to their call letters. FCC likewise knows the "trickery" that the National Association of Broadcastors, who's lobbyist represent many large public radio stations (some have a network of owning as many as 7 public radio stations or more) and have earnestly tried to raise unclaimed spectrum interference issue by falsifying "fake" recordings to block Limited Power increases by the FCC. LVPR requests $100,000 in damages from FCC for conspiracy Against Rights violations.

## STATEMENT OF SEVENTH COMPLAINT

7. Complaint against FCC for Deprication of Rights.On August 22, 2016 FCC denied LVPR testing rights to verify if there were any interference issues.

FCC has acted in concert with the CPB blocking any testing

requested by LVPR, to test for interference issues, which were negated by the

U.S. Air Force Lab, Washington, D.C. There is no language in the 2010 Local

Community Radio Act prohibiting testing for interference issues. The CPB and

FCC breach the Sherman Anti Trust Act by keeping a near monopoly in primary

and secondary markets, where there is no (upward mobility) way to expand

LVPR's station from a secondary to primary Class A station to gain financial

benefits relegated only to the "good old boys network". Limited Power

stations are always at risk of being bumped by a major broadcast

network and losing their investment, even though the U.S. Air Force Lab Study

concludes, that FM signals and cell signals are unnoticeable and seamless.

LVPR has a right to "pivot" since, 100 watts doesn't work and its listeners

 do not hear a clear sound broadcast within the contour range assigned by the

FCC.

### Seventh Cause of Action

 (Violations of 42 U.S.C. Sec. 1983 Civil Action For Deprication of Rights)

Plaintiff repeats and re-alleges each and every allegation in this Complaint,

and further alleges , as follows:

Pursuant to 42 U.S.C. Sec. 1983 FCC had a duty to allow LVPR the opportunity

to test for quality of listening as aforementioned, knowing that test results

would have allowed for a "waiver of ASC requirements" by CPB.

In contravention to the spirit of the statute, FCC refused to fully process

the qualified written request of LVPR to test and instead never provided an

answer as to why LVPR could not test, which is discriminate, exclusionary and confiscates LVPR's rights under 42 U.S.C. Sec. 1983.

LVPR requests damages of $100.000.00 from FCC for its violation of LVPR's rights.


## IV. Relief

1. Las Vegas Public Radio requests the court to appoint an attorney from its Pro Bono pool (The Civil Pro Bono Panel-Local Civil Rule 83.11 (b)(3).)in light of zero funds available to LVPR as disclosed herewith.(LVPR financials exhibit all current funds are exhausted. They would not be exhausted if CPB used reasonable judgement inclusive of the fact they are continuing to pay other public radio stations' tower, studio rental, programming, engineering, It, insurance and legal bills using tax payer funds to "sustain" them, better known as Corporate Welfare. Most current CPB CSG grantees have had a free taxpayer ride for over 25 years.) LVPR's Profit & Loss for 2017 is projecting a minus deficit of $90,000.00.

2.LVPR asks the court for a SUMMARY JUDGMENT

3.LVPR asks the court, if a SUMMARY JUDGMENT is not plausible, then perhaps the court so orders an arbitration MEDIATION status at this time.

4.LVPR requests the U.S. District Court to (injunction) over ride CPB's denial of LVPR 207 application for CSG and reinstate the necessary funding as articulated in CPB radio sharing report (to participate in the larger pool of radio broadcast, since Nevada's other public radio stations have previously received millions of dollars throughout recent history with out competitive diversity).

5.LVPR requests the U.S. District Court subpoena The Inspector General for CPB.

6.LVPR requests the court subpoena CPB "sustainable" history of all CPB CSG awards, including "stimulus funds" granted to Nevada Public Radio, University of Nevada Reno Public Radio, UNLV Public Radio, KCEP Public Radio all in Las Vegas, Cincinnatti Public Radio and Ohio Public Radio. All requirements dating from 2005 through 2016 (for bias comparison purposes).

7.LVPR requests the court subpoena Nielsen (Arbitron) management contracts entered into with CPB from 2008 through 2017. If private companies,that the CPB being a quasi federal public taxpayer supported agency deals with are not put out to bid or a request for proposal (RFP) is not made for competing contracts, what assurances do we have that CPB (which receives public funding and requires applicants to adhere to Nielsen Audience Service Requirements) is acting within the parameters set by Congress? However, does CPB recive public funding to guarantee Nielsen (Arbitron) a kick back by its pay for play,  which is abuse and fraud.

8.LVPR requests that the court subpoena Nielsen (Arbitron) Ratings to produce Nevada and Las Vegas Radio Ratings for subscribing stations (AQH Share for Persons 6+, Mon-Sun 6AM-Mid) from January 1 2016 through December 31, 2016 and January 1, 2017 through September 30, 2017.

9.Since, time is of the essence, due to the current H.R.727 bill in the U.S. of Representatives, which was introduced in February 2017 to defund the CPB, based upon self enrichment, malfesance and corporate welfare abuse, LVPR asks court to immediately order a freeze on CPB's CSG monies to be held in abeyance and used to allocate funding in the amount of $580,782.00 plus any other awards, in that if the court favors a SUMMARY JUDGMENT or MEDIATION, funds would still be available prior to CPB winding down its defunding as so ordered by Congress.

10.LVPR asks the court to order TREBLE punitive damages of $1,742,346.00 for exteme mental stress and emotional anguish experienced by loss of CPB CSG funding caused by CPB exsecutive "bias" and personal self enrichment at the expense of U.S. taxpayeres and the breach of ethical duties, conduct and lack of respect for the U.S. Constitution.

11.LVPR asks the court at its own discretion, to set an additional amount order of $56,000.00 from CPB's Radio Program Fund for exemplary damages to be used for LVPR's rolling "STEM" SUMMER EDUCATION PROGRAM FOR MILITARY TEENS.

12.LVPR requests the court subpoena The FCC regarding radio oversight. FCC allegedly acted in concert with CPB blocking any testing requested by LVPR to test interference issues, negated by the U.S. Air Force Lab, Washingon, D.C.

13. LVPR requests the court order the FCC to upgrade LVPR power from 100  to at least a minimum 250 watts at current LVPR tower location to determine signal is adequate in our local community, so station can be heard clearly in our community like many other stations. If stations signal still cannot be heard clearly and a new tower must be constructed, minimum power increase to 250 watts could be maintained, but a maximum of 1,000 watts may be needed based on additional interference testing. Maximum to 1,000 watts under authority of the court, which would solidify stronger local community underwriting contracts and allow a breath of fresh air in the free market place and competition with even local satellite's stations customers. The Local Community Radio Act (LCRA) signed into law on January 4, 2011 as an unfunded mandate does not mention, that no power increases are prohibited in the language of the report. It is a fact, that the FCC was considering at the time of inception of the original LPFM service in 1999, a minimum low power of one thousand (1,000) watts, shich was quickly challenged

by the National Association of Broadcastors' lobbyist to stop progress. The
FCC tossed out the challenge, because the NAB and their lobbyist attorneys
falsified interference recordings.

14.Should the court not be able to honor LVPR request for power increase
under the LCRA of 2010, LVPR respectfully asks the court to invoke the Joint
Operating Agreement (JOA),which is a U.S Department of Justice approved
method of maintaining competitive distinct voices in radio markets. Due to
inefficient use of public radio spectrum in our local community market, where
one public broadcast entity has more than one broadcast license, LVPR seeks
re-assignment of one of the broadcast licenses held by other public entity
citing Exhibit.....LVPR requests through this agreement, all operating fees
be paid by and for LVPR by other public entity for a term of 10 years.

15.LVPR is asking the court to remove the discriminatory FCC requirement that
LPFM stations have to announce their call letters with the -LP at the top of
each hour. If the mainstream media doesn't mave to do this, then why should
the LPFM stations have to do this?

16.LVPR is asking the court to give the option to LPFM stations, including
LVPR to either stay non-commercial if they want or switch to commercial
operations if underwriting is not covering their operational bills. The FCC
underwriting rules governing LVPR do not allow for competition and are
discriminatory by nature.

17.LVPR is asking the court to immediately change the status of LPFM stations
from secondary to primary status in their local communities around America,so
they don't get "bumped" by the mainstream media looking to shutdown the grass
root movements occurring all over America. This will allow LPFM's the

opportunity to start generating money to pay for the massive investments some

of them have made as well as to begin covering their operational costs.

18. LVPR asks the court to enforce the SIXTH Cause of Action for damages in

the amount of $100,000.00 against the Federal Communication Commission.

19. LVPR asks the court to enforce the SEVENTH Cause of Action for damages in

the amount of $100,000.00 against the Federal Communication Commission.

20. LVPR requests the court issue a restraining order against the CPB and FCC

on interfering with the day to day operations of said station until court can

secure LVPR's place in the Las Vegas,Nevada market, so station can be heard

clearly and serviced properly as a public radio station (non-commercial

educational) by all residents for years to come.

21. The FCC, acting in concert with CPB have rigged the system so any new

public radio stations(non-commercial educational) rising to market have zero

growth opportunities. This leaves new public radio stations (non-commerical

educational) operating under the Local Community Radio Act of 2010 no

alternative, but to return their broadcast licenses back to FCC, dismantle

newly formed Community Advisory Boards, lose their massive investments and

cease operations completely. Thus, silencing free speech at the expense of

these new stations. Epic failures by FCC and CPB are so artfully crafted for

keeping the American system rigged , ensure any new public radio stations

(non-commercial educational) who may have alternative agendas (e.g.

conservative or traditional) are silenced. Based on LVPR's claims herein,

this concert fulfills and satisfies existing members within CPB's network as

well as the lobbying arm of the National Association of Broadcastors so their

existing agendas are maintained. In light of the above, LVPR asks the court

to grant "whistle blower" protection status for LVPR".